The Honorable Eddie Cooper State Representative Post Office Box 1 Melbourne, AR 72556-0001
Dear Representative Cooper:
I am writing in response to your request for my opinion concerning the so-called "freedom of choice" provision in Arkansas law with respect to pharmacy services for residents of long-term care facilities (hereinafter "LTC" residents and "LTC" facilities). By way of background for your question, you state that "[i]t has come to [your] attention that several long-term care facilities across Arkansas are contracting for pharmacy services on a basis that denies residents the freedom of choice provided for by Ark. Code Ann. § 20-10-1204(a)(5) and Rule 555.1 of the Rules and Regulations for Nursing Homes of the Office of Long Term Care (rev. 12/1/05)." You then present the following question:
 [W]hether Ark. Code Ann. § 20-10-1204(a)(5) and Rule 555.1 will continue to be enforceable following the January 1, 2006 implementation of Medicare Part D with respect to:
 1. Medicare patients;
 2. Medicaid patients; and
 3. Private pay patients.
RESPONSE
Arkansas's "freedom of choice" law means that residents of long-term care facilities in Arkansas are assured the right to choose their own pharmacy. It is my opinion that the implementation of the federal law known as "Part D," under Medicare, does not affect the continued enforceability of this "freedom of choice." It should of course be recognized that for purposes of drug coverage under Part D, a resident's choice of pharmacy may be limited by the particular plan in which he or she is enrolled, as explained further herein. But I believe it is clear that Part D does not otherwise affect freedom of choice under Arkansas law, and that a long-term care facility cannot restrict a resident's access to his or her chosen pharmacy without contravening this law.
An initial review of the laws you have cited will be helpful in framing the issue presented. The Code section in question, A.C.A. § 20-10-1204(a)(5), includes the following among the rights that must be assured to each resident of an LTC facility under a "statement of [residents'] rights and responsibilities":[1]
 (5)(A) The right to freedom of choice in selecting a personal physician, to obtain pharmaceutical supplies and services from a pharmacy of the resident's choice, at the resident's own expense or through Title XIX of the Social Security Act,[2] and to obtain information about and to participate in community-based activities programs, unless medically contraindicated as documented by a physician in the resident's medical record.
 (B)(i) If a resident chooses to use a community pharmacy and if the facility in which the resident resides uses a unit-dose system, the pharmacy selected by the resident shall be one (1) that provides a compatible unit-dose system, provides service delivery, and stocks the drugs normally used by long-term care residents.
 (ii) If a resident chooses to use a community unit-dose system, and if the facility in which the resident resides does not use a unit-dose system, the pharmacy selected by the resident shall be one (1) that provides service delivery and stocks the drugs normally used by the long-term care residents[.]
A.C.A. § 20-10-1204(a)(5) (Repl. 2000) (emphasis added).[3]
The Office of Long Term Care within the Arkansas Department of Health and Human Services has also promulgated the following rule in this regard:
 555.1 Freedom of Choice
 To ensure that each patient admitted to a long term care facility is allowed freedom of choice in selecting a provider pharmacy, at the time of admission the patient or responsible party must specify in writing the pharmacy that they desire to use. The patient or responsible party must also sign the statement, or form, and the signed form should be filed with the signed Resident Rights' statement. The patient must be allowed to change the provider pharmacy if he desires. If true unit dose system[4] is used by the facility the patient will not be afforded the freedom of choice of pharmacy provider.
Office of Long Term Care Rule 555.1, Rules and Regulations forNursing Homes (Dec. 1, 2005).
As you can see, Rule 555.1 applies the "freedom of choice" provision to "each patient" of an LTC facility. I believe this is consistent with A.C.A. § 20-10-1204(a)(5), as it reflects the fact that when the General Assembly employed the phrase "at the resident's own expense or through [Medicaid]" under this statute in 1999 (see n. 3, supra regarding the statute's enactment), it was covering all residents of LTC facilities. This is because those who did not qualify for Medicaid generally obtained pharmacy supplies and services at their own expense. The State provided prescription drug coverage to beneficiaries under the Medicaid program (42 U.S.C. § 1396(a)(23)); but Medicare did not provide comprehensive prescription drug coverage. SeeMassachusetts Association of Health Maintenance Organizations v.Ruthardt, 194 F.3d 176, 177 (1st Cir. 1999) (observing that Medicare beneficiaries who desired prescription drug coverage outside the hospital setting "must either purchase supplemental private insurance or enroll in a health maintenance organization (HMO).")[5]
Medicare now provides a comprehensive prescription drug benefit through the "Part D" program alluded to in your question. Part D is a voluntary and privately-administered program that was created by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), Pub.L. 108-173, 117 Stat. 2066
(Dec. 8, 2003), codified as 42 U.S.C. § 1395w-101 etseq.[6] It provides for "qualified prescription drug coverage" (described in 42 U.S.C. § 1395w-102(a)) for those who are entitled to Medicare Part A (covering in-patient hospital services) and/or enrolled in Part B (physician services). These persons are known as "Part D eligible individuals." Id. at -101(a)(1) and (3)(A). Coverage is obtained through new stand-alone "prescription drug plans" (id. at -101(a)(1)(A) and -151(a)(14)) or through plans under Medicare Part C, formerly known as "Medicare + Choice," the program for private plans participating in Medicare which has been renamed "Medicare Advantage" (see note under 42 U.S.C. § 1395w-21 regarding implementation of Medicare Advantage).[7] Coverage under Part D was first effective on January 1, 2006. Id. at -101(a)(2).
Turning to your question regarding the effect of Part D on "freedom of choice" under A.C.A. § 20-10-1204(a)(5) and Rule 555.1, supra, with respect to Medicare, Medicaid, and "private-pay" patients, one potential issue involves the scope
of the freedom of choice statute in the wake of Part D. Before addressing that issue, however, I must note that Part D would appear to have no impact on freedom of choice with respect to private-pay LTC residents because Part D only applies to Medicare-eligible individuals who obtain prescription drug coverage through the program. See42 U.S.C. § 1395w-101(a)(3)(A) (defining "Part D eligible individual.") I assume in this regard that the term "private-pay patient" does not encompass such individuals. Nor does Part D have any implications with respect to freedom of choice for LTC residents who are entitled to Medicaid benefits but who are not eligible for Medicare. Id. Accordingly, your question regarding Part D does not necessitate discussing the continued enforceability of "freedom of choice" with respect to these persons.
Two categories of individuals implicated by your question remain to be considered: 1) Medicare beneficiaries who do not qualify for Medicaid and 2) the subset of Medicare beneficiaries who are entitled to full Medicaid benefits as well as Medicare benefits, known as "dual eligibles" under Part D (see42 U.S.C. § 1395w-101(b)(1)(C) (establishing a special enrollment rule for "a part D eligible individual who is a full-benefit dual eligible individual . . . [;]" see also id. at -101(b)(3)(D) (entitled "Medicaid coverage.")) These individuals do not fall within the literal language of the "freedom of choice" statute following the enactment of the Part D prescription drug program because they do not obtain prescription drug supplies and services "at [their] own expense or through [Medicaid]." A.C.A. § 20-10-1204(a)(5) (emphasis added). A government-funded benefit is, instead, now available to these persons through Medicare. Rule 555.1 of the Office of Long Term Care, supra, with its language ensuring freedom of choice to "each patient" (emphasis added) would, on the other hand, seem to encompass both categories of individuals. The concern is whether the statutory language prevents applying "freedom of choice" to these individuals, and whether the Rule must be called into question in light of this language.
I have considered these concerns and have concluded that they are unwarranted. Admittedly, the General Assembly did not and could not specifically have included coverage under the 2003 MMA when it enacted A.C.A. § 20-10-1204(a)(5) in 1999. Nevertheless, the intent for each resident of an LTC facility to have the benefit of A.C.A. § 20-10-1204(a)(5), regardless of the source of payment, is clear in my view, when it is realized that the phrase "at the resident's own expense or through [Medicaid]" was intended to be all-inclusive, as noted above. The federal government's recent assumption of prescription drugs costs for a certain LTC population consequently should not bear on the issue. This is consistent, moreover, with our court's holding that in determining legislative intent in order to construe an act, the reason and spirit of the legislation should take precedence over the letter of the act, where adherence to the letter would defeat the plain purpose of the law. Williams v. City of Pine Bluff,284 Ark. 551, 683 S.W.2d 923 (1985). See also Singer, Statutesand Statutory Construction § 54.04 (6th ed. 2000) (observing that "where the purpose of a statute can be achieved only by extending the operation of its language to its most inclusive meaning, even beyond its common meaning, courts will do so.")
Accordingly, it is my opinion that A.C.A. § 20-10-1204(a)(5) may reasonably be interpreted to extend to Medicare and Medicaid beneficiaries who are now covered by Medicare Part D.
The remaining question focuses on Part D itself, and the continued enforceability of "freedom of choice" under A.C.A. §20-10-1204(a)(5) and Rule 555.1 in light of this new federally-supported prescription drug program. Enrollees in prescription drug plans ("PDP's") under Part D have access to covered drugs through "pharmacy networks" (see42 U.S.C. § 1395w-104(a)(1)(B)(i)), which include any pharmacy meeting the terms and conditions of the PDP. Id. at (b)(1)(A). Certain Medicare Advantage (formerly "Medicare + Choice") enrollees obtain "qualified prescription drug coverage" (defined at § 1395w-102(a)) through Medicare Advantage ("MA") plans. Id. at -101(a)(1)(B). In the long-term care realm, specifically, the Secretary of Health and Human Services is authorized to establish standards with respect to access for residents of LTC facilities.Id. at (b)(1)(C)(iv). The Secretary has done so through the Centers for Medicare and Medicaid Services ("CMS"), the agency administering Medicaid and Medicare. The standards are contained in a CMS guidance document that establishes, inter alia, ten "performance and service criteria" for pharmacies wishing to participate in a PDP's LTC pharmacy network, as well as four "action steps" in order for a plan sponsor to meet Part D's "convenient access" requirement (42 U.S.C. § 1395w-401(b)(1)(C)).See CMS Long Term Care Guidance March 16, 2005 available athttp://www.cms.hhs.gov (last visited January 25, 2006). According to the guidance document, CMS based the criteria on "widely used best practices in the market." Id. The following specific areas are addressed: "Inventory," "Pharmacy Operations and Prescription Orders," "Special Packaging," "IV Medications," "Compounding/Alternative Forms of Drug Composition," "Pharmacist On-Call Service," "Delivery Service," "Emergency Boxes," "Emergency Log Books," and "Miscellaneous Reports, Forms and Prescription Ordering Supplies." Id. Any pharmacy able to meet the criteria and any other standards and terms established by a Part D plan must be offered a contract to serve the plan's enrollees who are LTC residents. Id. This is in accordance with Part D's "any willing" provider provision which states:
 Participation of any willing pharmacy
 A prescription drug plan shall permit the participation of any pharmacy that meets the terms and conditions under the plan.
42 U.S.C. § 1395w-104(b)(1)(A).
This "any willing" provider guarantee viewed in isolation might be seen as consistent with "freedom of choice" in Arkansas, thus resolving any concerns regarding the impact of Part D. If "participation" is guaranteed for each pharmacy meeting the applicable standards, it might logically follow that "freedom of choice" is in no way contrary to Part D. This interpretation fails to withstand scrutiny, however, when it is realized that Part D offers the choice of a plan to Part D eligible individuals (id. at -101), and not necessarily the choice of a pharmacy except insofar as someone might wish to choose a plan that includes their preferred pharmacy. Placed in context, therefore, Part D's "any willing pharmacy" provision is seen as no guarantee that residents of LTC facilities will have their choice of pharmacies. Indeed, this is borne out by the CMS guidance document, noted above. CMS states that it is anticipated that LTC facilities will "continue to contract exclusively" with pharmacy providers. Long Term Care Guidance March 16, 2005 at 3 (stating: "We expect that each LTC facility will select one or possibly more than one eligible NLTCP [Network LTC pharmacy] to provide Medicare drugs to its residents. A facility can continue to contract exclusively if it chooses . . ."). It therefore seems that Part D does not constrain an LTC facility's practice of entering an exclusive contract with an LTC pharmacy provider, as long as the contracting pharmacy is a network provider for all Part D plan beneficiaries. In other words, federal law apparently allows an LTC facility to require the use of an exclusive pharmacy provider. This leaves open the question whether a state law such as Arkansas's "freedom of choice" law might mandate that an LTC facility allow its residents who obtain drug coverage under Part D access to a chosen pharmacy.[8]
My research of this question has disclosed nothing in the Medicare Act that would appear intended to preclude a state imposing such an access requirement. I have considered in this regard an LTC facility's obligation under 42 U.S.C. § 1320c-5(a)(2) to assure that the services it provides "will be of a quality which meets professionally recognized standards of health care[.]" While it might be contended that open-ended access to pharmacies would compromise this quality-of-care requirement, I believe this presents a question of fact. I find nothing in Part D to suggest that exclusive access to a single pharmacy provider is necessary to meet the federally mandated requisite standard of care. To the contrary, Part D's directive that all qualifying pharmacies be allowed to participate as LTC network pharmacies implies that the federal government does not perceive wide, though somewhat restricted, access to pharmacies as contravening the quality-of-care requirement. I note additionally that the Part D network-participation criteria developed by CMS, supra, presumptively meet this requirement — i.e., the standards and criteria promulgated by CMS are the conditions that the federal government has determined are required of pharmacies to comply with the quality-of-care requirement.
It is my opinion in conclusion that as the law currently stands, there is neither an express nor an implied preemption of Arkansas's authority to impose a "freedom of choice" requirement on LTC facilities with respect to pharmacy services and supplies.See generally Hillsborough County, Florida v. Automated Med.Labs., 471 U.S. 707 (1985) (regarding general federal preemption analysis). Fact questions may arise under 42 U.S.C. § 1320c-5,supra, with respect to federally mandated standards of care, but the criteria applicable to network LTC pharmacies under Part D satisfy the mandate, in my view. In response to your specific question concerning Medicare Part D, it is my opinion that the implementation of this prescription drug program does not affect "freedom of choice" for residents of LTC facilities in Arkansas, except to the extent of providing drug coverage through plans that may limit that choice.[9]
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The introductory provision states that "[a]ll long-term care facilities shall adopt and make public a statement of the rights and responsibilities of the residents of the facilities and shall treat the residents in accordance with the provisions of that statement." A.C.A. § 20-10-1204(a) (Repl. 2000).
[2] Title XIX was added to the Social Security Act in 1965 to create the Medicaid program. 79 Stat. 343, as amended,42 U.S.C. § 1396 et seq.
[3] Similar legislation regarding residents' "right to choose" is found in the Omnibus Long-Term Care Reform Act of 1988, which includes among the rights that must be afforded residents of long-term care facilities under a "residents' bill of rights" "[t]he right to choose at their own expense a personal physician and pharmacist." A.C.A. § 20-10-1003(b)(6) (Supp. 2005) (emphasis added). I note that this statute does not include the reference to "Title XIX of the Social Security Act" (i.e., Medicaid) that is found in subsection 20-10-1204(a)(5), quoted above, suggesting a conflict between the two provisions. I also note that A.C.A. § 20-10-1003 is the most recent legislation, having been reenacted in 2003 (see Acts 2003, No. 1322, § 1). Subsection 20-10-1204(a)(5) was enacted in 1999 (see Acts 1999, No. 1181, § 3). While this might suggest that subsection20-10-1003(b)(6) is controlling as the more recent legislation, further scrutiny clarifies the matter. In amending totally unrelated sections of A.C.A. § 20-10-1003 and adding a new provision concerning "nutrition or hydration," Act 1322 simply reproduced the language of subsection 20-10-1003(b)(6) concerning the "right to choose" a pharmacist, which has been unchanged since the initial enactment of A.C.A. § 20-10-1003 in 1988 (see
Acts 1988, No. 17, 4th Ex. Sess.). Although as a general rule the most recent legislation on a topic will supersede conflicting earlier legislation on the same topic, the "last passed" rule has no application when "nonamendatory reenactments" are at issue.Citizens to Establish a Reform Party v. Priest, 325 Ark. 257,265, 926 S.W.2d 432 (1996). As the court observed:
 When an act amends the law, portions of the law that are not amended but simply retained are not thought of as new enactments. [Citation omitted.] Resorting to the `last passed' rule under such circumstances would elevate mechanical application over thoughtful analysis.
Id. As noted above, subsection 20-10-1003(b)(6) has been unchanged since 1988. By contrast, subsection 20-10-1204(a)(5), which includes the language regarding Medicaid, was enacted in 1999 (Acts 1999, No. 1181, § 3). It must accordingly be seen as the controlling "freedom of choice" provision.
[4] The term "true unit dose system" is undefined. I note, however, that if it is viewed as synonymous with the term "unit-dose system" under A.C.A. § 24-10-1204(a)(5)(B)(i),supra, a conflict arises between the Rule 555.1 and the statute because rather than denying "freedom of choice" in the event the LTC facility uses a "unit-dose system," the statute simply requires that a resident's chosen pharmacy must use a "compatible unit-dose system." The statute will of course prevail in the case of a direct conflict with the administrative rule. See generallyState v. Burnett, 200 Ark. 655, 659, 140 S.W.2d 673 (1940).
In considering the possibility of such a conflict I am also struck, however, by the fact that although the term "true unit dose system" under Rule 555.1 is undefined, the rules do define the term "unit dose medication system." As defined by Rule 100 of the Office of Long Term Care Rules and Regulations for NursingHomes (Dec. 1, 2005), a "unit dose medication system" is "a system in which single doses of drugs are prepackaged and pre-labeled in accordance with all applicable laws and regulations governing these practices and made available separated by resident and by dosage time. The system includes all equipment and records deemed necessary and used in making the doses available to the resident in an accurate and safe manner. A pharmacist shall be in charge of and responsible for the system." A conflict between Rule 555.1 and A.C.A. § 24-10-1204(a)(5)(B)(i) can be avoided, it seems, if this definition applies to the term "unit-dose system" as used in the statute. Indeed, the similarity between the terms "unit dose medication system" and "unit-dose system" is apparent, in my view, and supports the conclusion that the definition is properly applied in this manner. Accordingly, while a question may remain in the case of a "true unit dose system," whatever such a system entails, it is my opinion that "freedom of choice" under A.C.A. § 24-10-1202(a)(5)(B)(i) is assured as long as the community pharmacy selected by the resident uses a "unit dose medication system," as defined in Rule 100, that is compatible with the facility's system.
[5] Medicare provides health insurance to the elderly, the disabled, and other eligible beneficiaries. It was enacted in 1965 as Title XVIII of the Social Security Act, commonly known as the Medicare Act. See Health Insurance for the Aged Act. See
Pub.L. No. 89-97, 79 Stat. 286 (1965); 42 U.S.C. § 1395c.
[6] Section 101 of the MMA amended Title XVIII of the Social Security Act by re-designating Part D as Part E and inserting the new Part D.
[7] For a more extensive overview of Part D, see HealthPolicies Alternatives, Inc., Kaiser Family Fund., PrescriptionDrug Coverage for Beneficiaries: An Overview of the MedicarePrescription Drug, Improvement, and Modernization Act of 2003(Public Law 108-173) (Jan. 14, 2004) available atwww.kff.org/medicare/6120.cfm (last visited January 19, 2006).
[8] It bears mentioning that the question involves not only current residents, but also those who wish to gain admittance to an LTC facility, the concern being whether given the state statute and regulation guaranteeing choice, an LTC facility could restrict access to pharmacies as a condition of admittance to the facility. Although you have not elaborated upon the contractual arrangement(s) giving rise to your question, I assume that such a scenario might be involved. Such an arrangement would plainly be contrary to the legislature's express directive that an LTC facility "shall assure each resident . . . [t]he right to freedom of choice . . . to obtain pharmaceutical supplies and services from a pharmacy of the resident's choice. . . ." A.C.A. §20-10-1204(a)(5)(A). Accordingly, it is my opinion that an LTC facility may not use the source of pharmacy services and supplies as an admission criterion, assuming that subsection20-10-1204(a)(5)(A) is otherwise enforceable, as discussedinfra.
[9] The choice of pharmacies is also limited, as noted above (supra at n. 4), by the "compatible unit-dose system" requirement under the Arkansas "freedom of choice" statute (A.C.A. § 24-10-1204(a)(5)(B)(i)). As also indicated above in this regard, it is my opinion that the limitation under Rule 555.1 of the Office of Long Term Care with respect to "true
unit dose" is unenforceable if it refers to "unit-dose system" as that term is used by the General Assembly under subsection 24-10-1204(a)(5)(B)(i). To reiterate, the statute requires a "compatible unit-dose system." It does not deny "freedom of choice" if a LTC facility uses a "unit dose system."